ELIJAH M. DICKENSON & others *vs.* INHABITANTS OF FITCHBURG.

A petition for the assessment of damages occasioned by the taking of land to widen a highway, and a petition for a jury to revise the damages to the same land, assessed by selectmen, for altering the grade of the way, may be submitted together to one jury.

On the hearing before a sheriff's jury, of a petition for damages for land taken for a highway, evidence that a witness, not shown to be an expert, "offered the petitioners one dollar a foot for a portion of the land in question," is incompetent.

A party to a suit, admitted as a witness in his own favor, may testify to his opinion, if an expert.

A witness who has testified to his opinion of the value of land taken for a highway, may be asked, on his examination in chief, the facts and reasons on which his opinion is founded.

Evidence that land taken for a highway has since been laid out as a sidewalk is inadmissible in reduction of the owner's damages. But evidence that when it was taken it was probable that it would be improved in that way is admissible.

A special county commissioner, who as such has assessed damages in other cases for land taken for highways, is competent to give his opinion of the effect of taking for a highway part of certain land which he has often seen.

In estimating the value of land taken for a highway, its value to build permanent brick and stone buildings upon in the future is to be considered.

The value of land taken for a highway is to be assessed according to its value at the time of the taking, having regard however to the uses to which it may probably be applied.

In estimating the damages occasioned by taking land for a highway, no benefit is to be set off which is received by the petitioner in common with other abutters on the same street, no part of whose land is taken.

*It seems,* that the surrender of a lease to the lessor, after the land has been taken for a highway, with a release of the lessee's claim to damages, is admissible in evidence on the assessment of the damages.

APPEAL by both parties from the acceptance by the superior court of the verdict of a sheriff's jury empanelled to assess the damages occasioned to the petitioners by taking their land for the purpose of widening and altering a portion of the highway called Main Street, leading through the village of Fitchburg. The certificate of the sheriff stated the following rulings :

1. " At the time this petition was filed, the petitioners presented another petition, in which they set forth that the respondents altered the grade of a highway adjoining their land ; that they were aggrieved at the determination of the selectmen on the question of damages thereby ; and prayed for a jury to ascertain the same. The county commissioners ordered that both cases should be heard by the same jury, and the jury were summoned to try both cases. After the jury were assembled, and

before they were empanelled, the respondents objected to proceeding further, because it was improper for the same jury to hear and determine both cases. But the jury were empanelled in compliance with the order of the commissioners, and both cases tried before the same jury, against the objection of the respondents.

2. " A witness, called by the petitioners, was permitted, against the objections of the respondents, to testify that he had offered the petitioners one dollar a foot for a portion of the land in question. After the testimony had been so given, and after the sheriff had been requested to note the respondents' exceptions thereto, the counsel for the petitioners stated that, to save a contest about it, he would withdraw the testimony. The sheriff did not, however, instruct the jury to exclude this testimony; nor was he requested to do so by the petitioners.

3. " One of the petitioners was permitted, against the objection of the respondents, to testify that he had been offered one dollar a foot for all said estate; and also to give his opinion of the value of the estate.

4. " A witness, called by the respondents, testified that in his opinion the market value of the estate was enhanced by the alleged taking of a part of it for a highway. He was then asked by the respondents to state the grounds and reasons upon which his opinion was founded. The sheriff ruled, that the grounds and reasons upon which such opinion was founded were inadmissible as testimony, and did not permit the question to be answered.

" Another witness, offered by the respondents, gave in testimony a like opinion; and was asked to state the facts on which his opinion was founded. But the sheriff ruled, that the facts upon which such opinion was founded were not material to the issue; and did not allow them to be given as evidence.

5. " After the adjudication by the county commissioners, and previously to the hearing before the jury, the town had laid out all the land, taken from the petitioners, for a sidewalk, and paved it with brick for the accommodation of foot travel. The respondents offered evidence tending to show the effect upon the

petitioners' adjoining estate, in case the land taken was wrought
and prepared for the accommodation and convenience of foot
travel.   But the sheriff ruled, that it was not competent to show
what effect would be produced on the market value of the estate
by putting the land taken to any specific purpose for which a
highway may be used, or by preparing or appropriating it to
accommodate any particular class of travel; and declined to
permit the testimony to be given.

6. " The respondents called Thomas Billings, one of the
special commissioners of the county of Worcester, who testi-
fied that he lived in Lunenburg, and had seen the land in
controversy a number of times, and that as such commissioner
he had been called upon to assess damages for land taken for
highways.   He was then asked this question : ' From your
knowledge of the land of the petitioners, what would be the
effect of the taking of the land for the widening of the street, to
be used for the purposes of a highway ? '   And his answer was ·
' It would be beneficial.'   The petitioners objected to the wit-
ness being called, as against public policy ; he being one of the
board (though not having acted in this case) from whose decision
the appeal was taken ; also that he had not been shown to be
competent to give an opinion as asked ; and also that the ques-
tion was incompetent.   The objection of the petitioners was
overruled, and the testimony admitted.

7. " At the request of the counsel for the petitioners, the
sheriff gave the following instructions to the jury : That the
jury are to estimate as a subject for damages the value of the
land taken ; the loss of its use to the rest of the estate, whether
to build upon or to use in connection with the buildings, or to
enable the owners to make use of their land in the future, or to
enhance the value of the land in the sale ; and that the value of
the land taken, to build permanent brick and stone buildings in
the future, is an element of damage to be considered.

8. " That the jury are confined, in their estimate, to the state
of things existing at the time of the alteration ; that the jury
are not to take into consideration anything done, or that might
thereafter be done, by any other person or corporation ; and

that at the time of the alteration of the way the right of the petitioners vested in their damages as the facts then stood.

9. " That the damages for the taking of the land can only be offset by the benefits, (if any,) from the widening of the road as a highway ; that the jury are to take into consideration no benefits to the petitioners, that are not *peculiar* to them, and not shared by them in common with the rest of the public who are abutters upon the same street, and whose land has not been taken for the alteration.

10. " That the fact that at the time of the location there was a lease of a portion of the premises, which was afterwards surrendered, and all claim to damages released to the petitioners, as appears on the back of the lease, and by the paper filed during the trial, cannot in any way affect the claim for damages."

" The respondents also desired instructions to be given to the jury as follows, which I declined to present, to wit :

" First. That the direct effect upon the market value of the adjoining estate of the petitioners, occasioned by the taking of a portion of it for the purposes of a highway, and the probable uses and purposes to which the land taken may be lawfully put by the town, either for a sidewalk or the convenience of carriages, and whether such uses be injurious or beneficial to the estate, are proper matters for the jury to consider in deciding the question of damages ; and

" Second. That the benefits to the estate of the petitioners, occasioned by the taking of a part of it for a public highway, should not be excluded by the jury in their consideration of the question of damages, simply because such benefits are shared by some other abutters on the same highway."

*C. H. B. Snow,* for the petitioners. 1. There is nothing in the statute, which restricts the commissioners from sending all the petitioners' claims for damages to the same jury, although one claim is in the nature of an appeal from the decision of the commissioners, and the other from that of the selectmen. The statute simply provides in each case that the petitioner may have a jury to determine the matter of his complaint, and the

order of the commissioners in the present instance complies with the statute in letter and spirit. Rev. Sts. *c.* 24, § 13 ; *c.* 25, § 6. *Wyman* v. *Lexington & West Cambridge Railroad,* 13 Met. 311.

2. Offers made in good faith for the land in question are competent evidence to show the value of the land. *Wyman* v. *Lexington & West Cambridge Railroad,* 13 Met. 316.

3. It was competent for the petitioner to show what he had been offered for the estate in question, including the land taken, (and this is all that is intended by the ruling,) and he must be presumed to be sufficiently acquainted with the value of his own land to give a competent opinion thereon.

4. To allow the party calling an expert, to put into the case as evidence the reasons or facts upon which the opinion of the expert is founded, would open the door to the introduction of evidence otherwise entirely incompetent, and which might be in the highest degree injurious to the other party. Such reasons and facts are admissible upon cross-examination only. 1 Greenl. Ev. § 446. *Ingledew* v. *Northern Railroad,* 7 Gray, 86.

5. The right of the petitioners to damages attached at the time of the appropriation of the land by the action of the commissioners; and the fact that the land, at a subsequent period, had been put specifically to one of the uses to which a highway may be dedicated, is not admissible in reduction of damages. Rev. Sts. *c.* 24, § 11. *Dwight* v. *County Commissioners,* 11 Cush. 203. *Meacham* v. *Fitchburg Railroad,* 4 Cush. 291. *Parks* v. *Boston,* 15 Pick. 198.

6. The testimony of the commissioner should have been excluded, upon grounds of public policy, and because it did not appear that he had any acquaintance whatever with the value of the land in question, or of land in its vicinity, or the purposes to which it might be put. *Regina* v. *Gazard,* 8 Car. & P. 595. *Johnson* v. *Durant,* 4 Car. & P. 327. 1 Greenl. Ev. § 249.

7. The value of the land taken, for any use to which it might probably be applied, was admissible.

8. The value of the land, at the time when it is taken, is the value to be assessed.

9. The rule stated by the sheriff as to the offset of benefits against damages was such as would fairly be deduced from the established authorities. The instructions prayed for by the respondents were properly refused ; for the first embraced all benefits shared by the petitioners in common with others, as well as those peculiar to them ; and so much of it as related to what might be the future action of the town in relation to that part of the highway which included the land in question, was too remote and speculative to be considered by the jury in reduction of damages. The second was vague, incorrect and calculated to mislead the jury, and was incorrect in terms; for if the same benefit is shared by several, it can no longer be said to be peculiar ; and the expression " some other abutters " is broad enough to include the larger proportion, or even all the abutters on the highway, and therefore the instruction prayed for was in direct contravention of the established rule. *Meacham* v. *Fitchburg Railroad,* 4 Cush. 291. *Upton* v. *South Reading Branch Railroad,* 8 Cush. 600. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad,* 10 Cush. 385. *Brown* v. *Providence, Warren & Bristol Railroad,* 5 Gray, 35.

10. The fact of the existence of the lease, taken in connection with the subsequent action in regard to it, constituted no objection to the present proceeding, nor to the assessment of the entire damage to the petitioners. *Meacham* v. *Fitchburg Railroad,* 4 Cush. 291. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad,* 10 Cush. 385. *Davidson* v. *Boston & Maine Railroad,* 3 Cush. 91. *St.* 1851, *c.* 290.

*G. F. Bailey,* for the respondents. 1. This case ought not to have been sent to the same jury with the one to revise the proceedings of the selectmen on the question of damages occasioned by altering the grade of a highway. The two cases originated at different times, and in separate and distinct acts ; they arose under different statutes, and were adjudicated upon originally by tribunals of entirely different nature. They are not on the same general subject. Rev. Sts. *c.* 24, §§ 9, 15 ; *c.* 25, § 6. *Lanesborough* v. *County Commissioners,* 22 Pick. 282.

2. A mere offer for the land in question is not admissible as

evidence of its value. The offer may have been rejected for other reasons than the value of the land. If testified to by the petitioner, it is objectionable as hearsay. It only tends to show the opinion of the one who made the offer, as to the value of the land ; and it does not appear that he was competent to give such an opinion. *Davis* v. *Charles River Branch Railroad,* 11 Cush. 506. *Tufts* v. *Charlestown,* 4 Gray, 539.

3. The petitioner's opinion of the value of his own land ought not to have been admitted. *Wyman* v. *Lexington & West Cambridge Railroad,* 13 Met. 316.

4. It is competent for an expert to state, upon his examination in chief, the facts and reasons on which an opinion that he has given is founded. *Dickinson* v. *Barber,* 9 Mass. 225. *Commonwealth* v. *Webster,* 5 Cush. 301. *Dwight* v. *County Commissioners,* 11 Cush. 201. *Keith* v. *Lothrop,* 10 Cush. 453. *Morse* v. *Crawford,* 17 Verm. 499. *Morse* v. *State,* 6 Conn. 9. *Mahoney* v. *Ashton,* 4 Har. & McHen. 63.

5. The damages and benefits to the petitioner's remaining estate depend, in a great degree, on the manner in which the land taken is to be used, and on the nature and amount of travel over it ; it is therefore competent to show these things ; and if it appears that a particular class of travel will seek this point, then it is competent to show the effect of such travel on the market value of the estate. *Dwight* v. *County Commissioners,* 11 Cush. 201. *Meacham* v. *Fitchburg Railroad,* 4 Cush. 291.

6. The testimony of the special commissioner was properly admitted.

7. The sheriff erred in instructing the jury to consider " the value of the land taken, to build permanent brick and stone buildings in the future, an element of damage," irrespectively of the probabilities that the land taken would ever be thus used. *Dwight* v. *County Commissioners,* 11 Cush. 201. *Brown* v. *Providence, Warren & Bristol Railroad,* 5 Gray, 35.

8. The instructions given were vague and indefinite, and calculated to mislead, as tending to confine the jury to a naked change in the line of the highway, without permitting them to

consider the probability that the land taken would be suitably wrought to accommodate public travel, or a class of public travel, or the fact that it had been so wrought.

9. The instruction given as to the set-off of benefits, togethei with the sheriff's refusal to allow the second prayer of the respondents, left the jury to infer that direct benefits to the adjacent land of the petitioners could not be allowed in set-off, if such benefits were shared by one or two other abutters on the same street; and that benefits, to be allowed in set-off, must be peculiar to the petitioners. This is wrong; it is more strict than any previous cases. *Meacham* v. *Fitchburg Railroad,* 4 Cush. 291. *Dwight* v. *County Commissioners,* 11 Cush. 201. The sheriff erred in rejecting the instructions prayed for by the respondents.

10. When the county commissioners adjudicated on the question of damages, the petitioners had only a reversionary interest in a portion of the land, there being at that time an outstanding lease for the term of twenty years. The petitioners should not be allowed to increase their damages before the jury by extinguishing this lease. It affects the respondents unjustly in the matter of costs. *Parks* v. *Boston,* 15 Pick. 198. *Davis* v. *Charles River Branch Railroad,* 11 Cush. 506. Rev. Sts. *c.* 24, §§ 32, 38.

SHAW, C. J. This case arose thus : A narrow strip of the petitioner's land having been taken by competent authority, to widen a highway called Main Street in the village of Fitchburg, they applied to the county commissioners to issue a warrant for a sheriff's jury to assess their damages.

1. It is admitted that the proceedings in the case were regular, unless it was irregular for the commissioners to send this and another petition of the same applicants, for damage to their estate, to the same jury. No special reason is assigned in the present case why the two petitions, between the same parties, for two species of damage to their estate, should not go to the same jury, and therefore the case seems to be within the spirit, if not the letter, of the Rev. Sts. *c.* 24, §§ 15, 76. It does not appear to be objectionable. The warrant having been returned

by the sheriff to the superior court, with the verdict of the jury thereon assessing damages for the petitioners, its acceptance was objected to by the respondents on the grounds set forth in the certificate of the sheriff, as a bill of exceptions. But the verdict was accepted by the judgment of the superior court, from which this appeal was taken.

The following were among the points principally relied on by the respondents against the acceptance of the verdict.

2. A witness was called by the petitioners, and, against the objection of the respondents, was permitted to testify that he had offered the petitioners one dollar a foot for the land. It is stated that afterwards, to avoid a contest, the counsel for the petitioners said he would withdraw this testimony; but he did not ask the sheriff to instruct the jury to exclude this testimony, nor did he so instruct them.

This, we think, was inadmissible. Suppose the offer was one dollar a foot for the whole lot, which does not distinctly appear; it has no tendency to show that each foot was worth a dollar. Suppose the whole lot to be one thousand square feet, and the land taken one hundred, leaving nine hundred feet, the whole lot may still be worth one thousand dollars.

If it be said that the front part must be the most valuable; it may be so, whilst it was front, and all the rest rear. But when the front was taken for a street, the rear became front, with all the rights of ingress and egress.

Again, the witness may have had special reasons for making the offer. Had he been called to give an opinion, and, amongst other things, had stated that he had made an offer, and the circumstances under which it was made, we are not prepared to state that it would have been incompetent. But this does not appear.

3. One of the petitioners, being called as a witness, under the recent law making witnesses parties, was permitted, against the objection of the respondents, to testify that he had been offered one dollar a foot for all said estate. As to the offer, un-explained, the former remarks apply. As to the part of the objection, that the petitioner was allowed to give his opinion of

Dickenson & others *v.* Inhabitants of Fitchburg.

the value of his own land ; since the statute has provided that any party may be a general witness in his own case, we cannot see on what ground this testimony can be limited to particular facts, to the exclusion of others.   The admission of parties, not only interested to the full amount of the matter in controversy, but animated by all the feelings and passions which stimulate parties to litigation, must to some extent change the character of a jury trial.   It obviously throws a higher responsibility on juries, carefully to weigh the credit due to such witnesses, by all the legal means in their power.   In a matter of plain fact, where the witness must know how the truth is, and therefore must testify truly or commit perjury, the jury would probably be more likely to give him credit; but when it is matter of opinion, and when opinion is so easily warped by prejudice and interest, especially on a point where it is ordinarily practicable to procure other like evidence from unobjectionable sources, we should suppose that very little weight would be given to the testimony of a party.   But this is for the jury, and not the judge, to decide.

4.  The respondents having offered the testimony of a witness, that in his opinion the market value of the estate was enhanced by the widening of the street, the witness was asked by the respondents to state the grounds and reasons upon which his opinions were founded ; this was objected to by the petitioners, and rejected by the sheriff.

The court are of opinion that this evidence ought to have been admitted.   The ground on which an expert, a person of large experience in any particular department of art, business or science is permitted to testify to his opinion, is, that from his larger experience and more exact observation of facts, and the connection between certain appearances, and their causes or results, he is able to draw correct conclusions from circumstances, which a man of ordinary knowledge and experience could not do.   The circumstances on which such an opinion may be founded, are either facts of general notoriety, assumed to be known to all persons of skill and experience in the department to which they pertain, and which, when explained, may be

comprehended and applied by any person of good understanding; or it may be founded on facts proved.

Such general facts, assumed to be generally known without specific proof, because they are capable of being known and understood, without any such proof, to all inquirers, are vastly too numerous to define; but the point may be illustrated by saying, they are such as the elements and forces of physical nature, the structure, capacities and functions of the human and other animal bodies, the common powers, propensities and passions of human nature, and the impelling and governing motives to human action. As these are capable of being comprehended, when explained, without specific proof, it appears to the court that the witness should be permitted to explain the grounds and reasons of his opinion to the court and jury; they may readily perceive the force of his reasoning, the soundness or fallacy of his logic, and therefore judge of his capacity to give an opinion on the subject, and the correctness of his conclusions, and consequently the weight due to his opinion.

But it is objected that the admission of this evidence would open the door to evidence entirely incompetent, by allowing the witness to state the facts on which the opinion is founded, facts not proved by competent evidence.

This objection seems to us to be founded on a misconception of the manner in which the investigation is to be conducted, and the testimony of experts received and applied. It assumes that the facts will be taken to be true, because the witness has stated that he founds his opinion upon them. But this is quite a mistake. In order to obtain the opinion of a witness on matters not depending upon general knowledge, but on facts not testified of by himself, one of two modes is pursued: either the witness is present and hears all the testimony, or the testimony is summed up in the question put to him; and in either case the question is put to him hypothetically, whether, if certain facts testified of are true, he can form an opinion, and what that opinion is? The jury will then be instructed, if the truth of any such fact is contested, first to consider whether the fact on which such opinion rests is proved to their satisfaction; if it

is, then to give such weight to the opinion resting on it as it deserves; but if the fact is not proved by the evidence, then to give the opinion no weight. This is necessary to enable the jury, upon the true theory of jury trial, to decide all questions of fact, upon competent evidence laid before them. *M'Naghten's case*, 10 Cl. & Fin. 200.

But the consideration submitted in the argument in opposition to this view, namely, that the opinion may be given on the assumption of facts not proved, is a strong additional reason why the grounds and reasons of the opinion should be stated, in order that the jury may see that it is not founded on hearsay, general rumor, or facts of which some evidence may have been given, but, being controlled by other evidence, are not found true by the jury. This inquiry has been more frequently made in cross-examination, yet we are of opinion that it is competent evidence in chief. It is in fact this general knowledge, on the specific facts judicially proved, from which the jury draw their ultimate conclusion, though in matters of science they may be aided by the more exact observation and the larger experience of the trained expert. *Keith* v. *Lothrop*, 10 Cush. 453.

5. We think the evidence of the fact that, when the damage was assessed, a sidewalk had been laid down on and over the land, and of the value of such sidewalk to the estate, was rightly rejected by the sheriff, because that use might be changed afterwards to any other use to which a street may be appropriated. But the uses to which such a strip, taken to widen a street in a village or city, would probably be applied for a sidewalk or other use beneficial to the adjacent owners, might properly be taken into consideration, in estimating the benefit to be set-off against the damage done to the same estate by the taking.

6. We think Mr. Billings, a special county commissioner, was rightly admitted as a witness, to testify to his opinion of the value of the estate, and the effect of the taking upon such value. His position and duties would ordinarily qualify him to form a correct opinion on such subjects; and it contravened no public policy.

7. We now come to the consideration of the instructions

47 *

given by the sheriff to the jury. By the first, the direction was, that the jury might take into consideration the possibility of appropriating the land to the use of building brick or stone houses thereon; this was not exceptionable, as we understand it It was one of the uses to which it was possible the estate might be applied, and there was no necessity of qualifying it by proof that such use was probable. The actual value of the estate, before and after the widening of the street by taking a portion of it, were proper subjects for the jury to take into consideration, and the exceptions thereto, we think, were not well taken.

8. The instructions that damages are to be assessed according to the effect of the taking of the land at the time it was taken, were right. But this is not to be understood that the damage was to be estimated as the land then lay, unfitted for use as a street; but according to the prospective use of the street when wrought and fitted for use as a part of the street, for a sidewalk or carriage way ; and the consequence of such taking of part, to the residue of the land when thus fitted for use as part of the street.

9. We think the instructions as to the set-off of benefits were correct, unless it may be that the sheriff placed some peculiar stress on the word *peculiar*, as underscored. We presume it was a mere caution not to lay stress on that vague, general, indefinite benefit, which all inhabitants of a particular locality are said to derive from a great public improvement as a canal or railroad. The true rule is stated in *Upton* v. *South Reading Branch Railroad*, 8 Cush. 600, and *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 10 Cush. 385.

10. We are inclined to think that the evidence of the surrender of a lease, before the damages were assessed, ought to have been received, because it left the estate discharged of any other interest, as if no other had existed. But as the lease had a short time to run, and probably at a rackrent, there was so little interest in the leaseholder, to be affected by the taking of this small strip of land, that whether it subsisted or not could only affect the damage. It could hardly of itself be considered a sufficient ground, if it stood alone, for disturbing the verdict.

For these reasons, this court are of opinion that the directions to the jury were incorrect in several material particulars; that the verdict returned ought not to be accepted; and that a mandate go to the county commissioners, directing them to issue a new warrant to assess the damages of the petitioners.