STATE OF MAINE
*vs.*
OTTO BENNETT

Knox.  Opinion, April 5, 1962

*Peter Sulides*, for state.

*A. Alan Grossman*,
*John L. Knight*, for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SULLIVAN, J.   Respondent was accused by indictment of having carnally known a female child of eleven years in contravention of R. S., c. 130, § 10.   During his trial by jury respondent excepted to several judicial rulings.   The verdict was guilty and respondent now prosecutes his exceptions.

## EXCEPTION 14

At the close of all evidence the respondent unsuccessfully moved for a directed verdict.

The principles applicable and controlling upon this issue are well established:

> "To the refusal of the Justice to direct a verdict of not guilty, upon the grounds suggested, the respondent excepted, and these exceptions were filed and allowed.   The only issue raised by the exceptions is, whether there was sufficient evidence to warrant the jury in rendering a verdict of guilty. - - - - If the jury believed the defendant, their verdict should have been in his favor.   If they did not believe him, then there was ample testimony to sustain the verdict which they rendered."
> *State* v. *Clancy*, 121 Me. 363, 364.

> " - - - - Although corroboration of her (prosecutrix's) testimony was not necessary - - - "
> *State* v. *Morin*, 149 Me. 279, 281.

> "Corroboration beyond the testimony of the prosecutrix is not required under our law to prove the crime of rape. In the absence of corroboration, the testimony of the prosecutrix must be scrutinized and analyzed with great care. If the testimony is contradictory, or unreasonable, or incredible, it does not form sufficient support for a verdict of guilty - - - "

*State* v. *Field*, 157 Me. 71, 76.

Inferentially there were no observers of the crime with which the prosecutrix charged this respondent. The child narrated the consummated event and circumstances and identified the respondent as the violator. No spiteful or malicious motive of the girl seems to have been discoverable. Collateral real evidence and ancillary testimony of witnesses were credible, of unusual quantity and amply sufficient when believed to verify the wrong imputed. Occasion and opportunity, personal relationship, a medical examination of the victim, an expertly analyzed bloodstain, prosecutrix's blood test and grouping, communicated writings in a code known to both principals, depraved and pertinent utterances attributed to the respondent by listeners constitute some of the corroborative proof which the jury was justified in concluding to be trustworthy and authentic. The respondent roundly asserted his innocence and in addition to his voiced denials, distinctions and refutations supplied some medical testimony which would have made possible at least the conclusion that respondent had been physically incapable of the offense. But real and spoken evidence and their advantage in observing the principals and witnesses completely vindicate the jurors in their verdict of guilt beyond a reasonable doubt.

There was no error in the refusal to direct a verdict of not guilty. *State* v. *Allen*, 151 Me. 486, 490.

### EXCEPTION 1.

The child prosecutrix was asked a pertinent question which respondent's counsel challenged as leading. The presiding justice in his discretion permitted an answer. The witness was a girl of 12 years at the time of trial. Wigmore on Evidence, 3rd ed., Vol. III, § 778. The examination was no doubt thus "made more brief and pertinent" and the action of the justice is not exceptionable. *Blanchard* v. *Hodgkins*, 62 Me. 119, 120; *Harriman* v. *Sanger*, 67 Me. 442, 444.

### EXCEPTIONS 2, 3, 4, and 5.

The prosecutrix in redirect examination was interrogated against objection as to whether she had directed the attention of anybody to a bloodstain. Defense protested that the inquiry should have been earlier addressed in direct examination. The justice administering the trial had discretionary authority to permit such questioning by special leave. Maine Criminal Rules, 5, 155 Me. 645.

### EXCEPTION 6.

Defendant challenged the propriety of a question designed to reveal the identity of a chattel in a photograph taken a year or more after the asserted crime. Defense was overruled.

The order of proof to demonstrate fact is within the bounds of sound judicial discretion. *Billings* v. *Inhabs. of Monmouth*, 72 Me. 174, 177. Later considerable evidence was supplied by the State to justify a jury finding that the chattel photographed had not changed appreciably in condition or status from the date of the imputed crime to the time of the photographing. The respondent in fact subsequently placed in evidence 8 photographs of the same object, taken by the same person and at the same time.

## EXCEPTION 7.

A wooden board containing a bloodstain had been detached by the State from a "hen nest" or coop and was offered in evidence as a relevant property in the perpetration of the alleged offense. Defense disputed the admissibility of the exhibit because of the elapsing of a year since the event the board purportedly evidenced, because the pathologist had only succeeded in confirming a general grouping of A for the blood comprising the stain and had been unable to assign any definite age to the blood except an assurance that it was more than a week, because expert testimony revealed that 44% or 45% of the American population has A blood and persons other than the prosecutrix had had access to the hen nest, because the board had not been reaffixed to the rest of the hen nest which had already been admitted in evidence and because some cleats had been somewhat displaced from their original positions upon the coop.

The board and its blood stain stood in a milieu of connected circumstances. The constant situation of the board from September, 1959 until trial, its unchanged condition throughout and the position of the board prior to its severance from the coop had been detailed in evidence to the jury. The stain was of blood group A. The prosecutrix had been determined by a testifying medical laboratory technician to possess type A, RH positive blood. During several months subsequent to September, 1959 and during the course of his employment by the father of the prosecutrix respondent had an almost daily occasion to observe and utilize the hen nest in his work. The hen nest save for the controversial board had already been admitted in evidence. The prosecutrix had related that the board had constituted part of the plane surface upon which the crime had been enacted and had sworn that her blood had stained the board's top side. The relation of the board to the trial issue had become by an aggregation of circumstances quali-

fied for jury consideration. That decision was the well-acquitted duty and responsibility of the presiding justice.

> "Whether the evidence of the witness was too remote, was within the discretion of the presiding judge. Ferron v. King, 210 Mass., 75. Discretion does not appear to have been exercised wrongly. An excepting party, to have his exceptions sustained, must show himself aggrieved. Davis v. Alexander, 99 Me., 40. That, these exceptors do not show."
> *Masse* v. *Wing*, 129 Me. 33, 36.

### EXCEPTION 8.

Prosecutrix testified that several months after the charged offense the respondent drove past her and threw to her a letter written in the characters of the Morse Code. She produced the letter in court and related that she had read the letter, had continuously preserved the letter in her personal possession and had placed upon it deciphering letters of the English alphabet to which she directed attention. The letter professed enraptured love.

The letter was ostensibly relevant with respect to disposition and relationship between prosecutrix and respondent. *State* v. *Williams*, 76 Me. 480, 481. In view of its imputed source, the testimony of the prosecutrix as to its safekeeping and her accounting for the specified additions the letter was proper for jury ponderance after cautionary explanations which we are to assume the presiding justice rendered. *State* v. *Witham*, 72 Me. 531, 535.

### EXCEPTION 9.

The sheriff of the county qualified as a translator of Morse Code. He deciphered into written English the letter which is the subject of Exception 8, *supra*. Defense objected to the reception into evidence of the Sheriff's tran-

scription because the code letter itself had not been demonstrated to have been written by the hand of the respondent and the Sheriff's translation only served to emphasize a remote matter. This exception contained no merit.

### EXCEPTION 10.

The sheriff was asked and suffered to respond that he had detected one or two incorrectly used characters in the Morse coding upon the letter considered under Exception 8, *supra*. The exception is devoid of gravity.

### EXCEPTION 11.

The sheriff after the admission in evidence of his translation of the code letter was permitted to read his rendition aloud to court and jury. Defense contended that the reading would unduly emphasize the subject and that the sheriff's decipherment spoke for itself as the best evidence. We can detect no exceptionable error.

### EXCEPTION 12.

The mother of the prosecutrix was questioned in cross-examination as follows:

" - - - - did (prosecutrix) read magazines?

"Yes.

"And the magazines she did read would be these romantic and sexy magazines?"

The court excluded the latter question as:

" - - - - an unfair characterization and might not give the witness an opportunity to describe what magazines the young lady may read."

Such a ruling is not censurable. In fact defense in the wake of the above exclusion interrogated the witness to an

apparent satisfaction upon the subject matter of the magazines read by the prosecutrix.

### EXCEPTION 13.

Defense counsel inquired of the prosecutrix:

"What were some of the magazines you read this summer? Is there anything funny about that question, - - - - ?

The court interrupted:

"I don't think you need to ask the witness whether there was anything funny, - - - - It is not proper for you to characterize on the record any expressions on the witness' face. You may inquire."

The jury was observing the facial reactions of the prosecutrix. Nothing of any possible benefit to the defense therefrom was calculated to pass unseen. Defense later enjoyed the full privilege of argument at which time full characterizations were doubtlessly availed of. From the lifeless printed record we cannot tell whether the attitude, tone or demeanor of inquiring counsel consciously or unconsciously excited some sensation in the witness. This restraint imposed by the court upon a cross examination was of trifling import in this case.

### EXCEPTION 15.

This exception is stated upon the record as follows:

"After charge of the Justice and before the jury retired to deliberate, respondent's counsel took exception to that part of the Judge's charge in which he stated: 'I take judicial notice of the fact and instruct you that Hope is in the County of Knox,' which was prejudicial to the respondent there having been no testimony to this effect, said comment being in violation of Chapter 113, Section 104 of the Revised Statutes of Maine, 1954, as amended."

In *State* v. *McKrackern*, 141 Me. 194, 209, this court decided:

> "Exception that 'there is no proof that the offense alleged was committed in the County of Sagadahoc.' But there was ample testimony to show that this offense was committed in the Town of Topsham, and judicial notice must be taken that the town of Topsham is in the County of Sagadahoc. Harvey et al., Petitioners, v. The Towns of Wayne, Readfield, and Winthrop, Appellants, 72 Me., 430, 432; Coffin v. Freeman, 84 Me., 535, 540, 21 A. 986."

The mandate must be:

*Exceptions overruled.*

*Judgment for the State.*